## LARCH ET AL. v. HOLZ.

### [No. 7,827. Filed March 14, 1913.]

1. FRAUDULENT CONVEYANCES.—*Action by Administrator to Set Aside Conveyance of Decedent.—Complaint.—Necessary Allegations.*—In an action by an administrator, on behalf of the creditors of the estate, to set aside the fraudulent conveyance of the decedent, it is necessary to aver that at the time of the conveyance the decedent was insolvent and did not have enough property subject to execution to pay his then existing debts, and that he had no property subject to execution when the suit was brought. p. 59.

2. FRAUDULENT CONVEYANCES.—*Complaint.—Sufficiency.—Supplemental Complaint.*—A supplemental complaint relates back to the filing of the original complaint, so that where the original complaint in an action to set aside a fraudulent conveyance alleged that the defendant had no other property at the time of such conveyance, or at the time of the commencement of the action out of which plaintiff's debt could be made, a supplemental complaint filed after the defendant's death, and on the substitution of his administrator as a defendant, was not objectionable on the ground that it failed to aver what property the decedent owned at the time of his death, or that his administrator did not have on hand sufficient assets to pay decedent's debts. p. 59.

3. FRAUDULENT CONVEYANCES.—*Sufficiency of Evidence.—Fraud.*—In an action to set aside as fraudulent a mortgage executed by the debtor to his mother on his interest in real estate left by his

father, where it affirmatively appears from the evidence that the mortgage was executed to secure a *bona fide* indebtedness due to his mother, that the mortgage was agreed upon before it was known by either of them that the plaintiff had not filed his note as a claim against the estate of the debtor's father, who had been surety for the debtor on the note held by plaintiff, that at the time of executing the mortgage neither the debtor nor his mother knew that it would in any way affect the collection of plaintiff's note, and that the mortgage was taken by the mother for the purpose of preventing litigation and to make herself safe, there is no fraud shown to support a judgment for plaintiff.   pp. 60, 63, 67.

4.   APPEAL. — *Review.* — *Evidence.* — *Judgment.* — A judgment for plaintiff will not be disturbed on the evidence, if there is any evidence tending to support each material averment of the complaint.   p. 63.

5.   FRAUDULENT CONVEYANCES.—*Extent of Invalidity.*—A conveyance, made for the fraudulent purpose of cheating, hindering and delaying the creditors of the grantor, is void in its entirety.   p. 65.

6.   FRAUDULENT CONVEYANCES.—*Fraud.—Burden of Proof.*—Fraud is never presumed, but the burden of proving it is upon him who alleges it, so that the burden is upon one who claims that a conveyance was in fraud of creditors to show that fact.   p. 65.

7.   FRAUDULENT CONVEYANCES.—*Preferences.*—The fact that the giving and acceptance of a mortgage or other security, given to secure an honest debt and in good faith accepted for that purpose, operates to defeat the claims of other creditors, affords no grounds for complaint on the part of the latter.   p. 65.

8.   FRAUDULENT CONVEYANCES.—*Preferences.*—An insolvent debtor may lawfully prefer one or more of his creditors by payment, mortgage, pledge or deed, to the exclusion of the others, and the validity of such preference is not affected by the fact that the preferred creditor is a near relative of the debtor.   p. 66.

9.   FRAUDULENT CONVEYANCES.—*Preferences.—Right of Creditor to Procure Preference.*—In the absence of statutory prohibition, it is neither a legal nor moral wrong for a creditor, even with knowledge that other creditors will be deprived of obtaining payment of or security for their claims, to obtain payment of or security for his honest claim, and he is not bound to abate any degree of vigilance in doing so, in order to give some other creditor an equal chance.   p. 66.

10.   FRAUDULENT CONVEYANCES.— *Fraud.— Evidence.—* Knowledge on the part of a creditor of the existence of other debts at the time of accepting a mortgage to secure his claim, and that such other creditors had taken no steps to collect or secure their claims, and that the acceptance of such mortgage would render

the other debts impossible of collection, would not be evidence of fraud, if the debt for which the mortgage was given was *bona fide.* p. 67.

11. FRAUDULENT CONVEYANCES.—*Evidence.*—*Sufficiency.*—Evidence is insufficient to sustain the setting aside of a mortgage on the ground that it is a fraud against creditors, where it is not shown that the mortgagor had no other property subject to execution. p. 68.

From Warren Circuit Court; *J. T. Saunderson,* Judge.

Action by John Holz against Elizabeth Larch and another. From a judgment for plaintiff, the defendants appeal. *Reversed.*

*Edwin F. McCabe,* for appellants.

*William B. Durborow,* for appellee.

·HOTTEL, J.—This is an action by appellee against appellants to set aside as fraudulent a mortgage executed by Walter H. Larch to appellant, Elizabeth Larch, who is the mother of Walter. Appellee filed with his complaint an affidavit and bond on which an order for writ of attachment was asked and obtained. During the pendency of the suit, Walter H. Larch died and Wilson Goodrich was appointed administrator of his estate and substituted as a defendant, whereupon a supplemental complaint was filed. A demurrer to the complaint was overruled and the cause put at issue by an answer in general denial. A trial of the cause by the court resulted in a finding and judgment for appellee setting aside the mortgage and for appellants on the attachment proceeding. A motion for new trial made by appellants was overruled and an appeal prayed. The errors assigned in this court and relied on for reversal call in question the sufficiency of the complaint to withstand a demurrer and the ruling on the motion for a new trial.

The complaint contains the usual averments of a complaint of its character and the only objection urged against it is, that the supplemental complaint fails to aver what property Walter H. Larch owned at his death or that the administrator did not have in his hands assets sufficient to pay the

debts of said Walter. In support of this contention appellants rely on the cases of *Cox* v. *Hunter* (1881), 79 Ind. 590, 596; and *Jarrell* v. *Brubaker* (1898), 150 Ind. 260, 270, 49 N. E. 1050. The case at bar is easily distinguished from those cases. In those cases the administrator himself sought to set aside as fraudulent, conveyances made by his deceased grantor in his lifetime and subject the real estate so conveyed to sale for the payment of the debts of such grantor. In such a case it was necessary, under the well-established rules of law, that the administrator before he could set aside such conveyances, should allege and prove that the decedent had no other property or assets out of which his debts might be paid in order to show the necessity of resorting to such real estate for such purpose. §§2848-2850 Burns 1908, §§2332-2334 R. S. 1881. Independent of the foregoing sections of statute, the action in each of the cases relied on by appellant, being by the administrator for and on behalf of the creditors of the fraudulent grantor, it would be necessary for such administrator to aver such facts as the creditors would themselves be required to aver, and this would require him to aver and prove that when the conveyance alleged to be fraudulent was made ''the debtor was insolvent and did not have enough property subject to execution to pay his then existing debts, and that he had no property subject to execution when the suit was brought.'' *Cox* v. *Hunter, supra,* 595, 596; *Cannon* v. *Castleman* (1905), 164 Ind. 343, 348, 73 N. E. 689, and authorities cited.

2. The supplemental complaint in this case, relates back to the filing of the original complaint and averments in such supplemental and original complaint to the effect that Walter Larch had no other property at the time of such conveyance, or, at the time of the commencement of the action, out of which the debt could be made, fully complied with the demands of the law indicated by the foregoing decisions. The complaint was sufficient as against the objection urged.

In the discussion of the alleged error of the court in
3.   overruling appellants' motion for a new trial it is
very earnestly insisted that the decision of the court
is not sustained by sufficient evidence.   The facts disclosed
by the evidence about which there seems to be no dispute
are in substance as follows:  On February 23, 1906, Walter
Larch borrowed of appellee $2,000 for which he gave his
note with his father, Aaron Larch, as surety.   Aaron Larch
died testate, October 3, 1906, (We quote from appellee's brief.)
"and left all of his property real and personal to his wife,
Elizabeth Larch, the appellant, during her life, with power
of disposing of the personalty but the remainder in fee of
personalty and real estate, in certain specified parts, to his
four children, Walter being one of them.   To Walter was
left forty-five acres in Warren County and a house and lot
in Ambia, Benton County, subject to his mother's life estate,
also a certain legacy in money if so much was on hand at the
death of the widow, Elizabeth.   Walter Larch and his
mother, Elizabeth Larch, were appointed executor and ex-
ecutrix.   While the estate was pending in court, Walter Larch
paid Holz the interest as it accrued on the note    *    *    *.
The final account in the Aaron Larch estate was made and
sworn to, January 5, 1909, and on the same day    *    *    *
Walter Larch executed to his mother a mortgage on all the
real estate devised him in his father's will, excepting some six
acres which was omitted from the mortgage by the mistake
of the scrivener, to secure a note purporting to have been ex-
ecuted by Walter to his mother, December 2, 1908, for $3600
which was afterwards reduced to $3440.   Walter Larch
had bought and moved on a farm in Michigan some thirteen
months prior and was living there with his wife when this
action was brought    *    *    *.   Walter owed his father at
the time of the father's death, a note for $180.   After Walter
was appointed executor he, as executor, drew from the bank
at Ambia, $1,100 of the estate fund    *    *    *   and gave his
mother his personal note for the money.   Walter owed John

Gay a $2,000 note on which his brother, Perry, and another were security. At the solicitation and persuasion of Perry, his mother, Elizabeth, paid off this $2,000 Gay note. * * * About a month afterwards, Mrs. Larch went to Michigan and brought Walter back with her to Indiana, that there had been difficulty in getting Walter to come back to make settlement. At Mr. Sutton's office in Williamsport on January 5, 1909, * * * Walter executed to his mother the mortgage purporting to cover all the real estate devised him in his father's will to secure this note that was dated December 2, 1908.'' It is insisted by appellee that these facts in effect show, that Walter stripped himself of all his property, and with the knowledge of his mother prevented Holz from realizing on his note; that Elizabeth Larch by interfering in the payment of the Gay note in the manner stated, instead of leaving Gay and Holz an equal opportunity to make their respective debts off of Walter, practiced a fraud on appellee which was knowingly contributed to and participated in by Walter.

In addition to the facts before quoted from appellee's brief, the undisputed evidence discloses further facts as follows: the will of Aaron Larch, deceased, was probated December 17, 1906, and said Walter and Elizabeth qualified as executor and executrix and on the next day, to wit: December 18, filed an inventory showing personal property appraised at $2,399.20. There was cash in the bank and notes belonging to said estate aggregating several thousand dollars, which for some reason were not placed on the inventory. The deceased, Aaron Larch, left ample property, both real and personal to pay all his debts, including said note on which appellee was surety for said Walter. The final report made and sworn to by Elizabeth Larch and her son Walter on January 5, was filed with the clerk of the court January 6, 1909, and was set for hearing on February 8, 1909. Notice of such hearing was issued on January 6, 1909. Appellee neglected to file his said note as a claim against said estate.

Appellee is forced to rely chiefly, if not exclusively, on the evidence of Elizabeth Larch to show that the mortgage in question was given to her by her son for the fraudulent purpose of cheating, hindering and delaying him in the collection of his debt. Mrs. Larch expressly and positively denied any such intent, and testified that, at the time she paid the Gay note and had her settlement with her son Walter in which he gave her the $3,600 note and agreed to secure the same by the mortgage on his real estate, she then did not know that appellee had not filed his note against the estate of her husband, and that all she was trying to do was to get Walter to settle up, prevent litigation and make her safe. She further testified, in effect, that she did not learn that appellee had not filed his claim until January 5, 1909, when she was told by her attorney who prepared her said final report, settling her husband's estate; that at the time she took her mortgage from Walter he still owned his farm in Michigan and she thought he could and would pay appellee's note. Some apparent contradictions appear in this old lady's evidence, on the subject of dates and persons present on the different occasions mentioned in her testimony, but a careful examination of the evidence convinces us that such apparent contradiction is, in a large measure, if not altogether, explained by a confusion of occurrences both in the questions of the interrogator and the answers of the witness. It appears from the evidence that the Gay note was paid at the bank of Ambia by Mrs. Larch on one occasion and that a month later, viz., January 2, 1909, she met her sons Walter and Perry at the same bank and there had her settlement with Walter in which the Gay note was again considered and settled with him. Both of these transactions at the bank seem to have been referred to, both by the questioner and the witness, as the occasion when the Gay note was settled, and as a consequence confusion and apparent contradiction resulted as to dates and the persons present on these respective occasions. It is insisted by appellee, in

effect, that these apparent contradictions may have caused the trial court to discredit the statements made by Mrs. Larch in her own favor, and furnished such court the ground and reason upon which it based its decision that the transaction in question was fraudulent. Granting that such confusion and apparent contradictions were of a character to warrant the trial court in disregarding the statements of Mrs. Larch, favorable to herself, yet, the burden was on appellee to show that the transaction was tainted with fraud, and this was a fact to be proven, and, in the absence of such proof, could not be presumed.

We recognize that, under the well-established rules of this court, if there be any evidence tending to support each material averment of the complaint, the judgment of the trial court must be affirmed. But appellee has been unable in his brief to point out any evidence even tending to show fraud unless the apparent contradictions mentioned, can be so treated, or unless the additional fact that the evidence does not satisfactorily show that Walter Larch was present when his mother paid the Gay note, and that from all that appears, this payment, when it was made, may have been voluntary on her part and without the knowledge or consent of her son, can be said to be evidence of such fraud. On this last proposition the evidence shows that Mr. Hunter, the attorney for Gay, was present·both on the occasion of the payment of the Gay note by Mrs. Larch, and on the occasion of her settlement with her son. A memorandum made by Mr. Hunter of the various items that made up the payment of the Gay note shows that the interest on each of the notes was calculated to December 2, 1908, and in connection with the other evidence furnishes conclusive proof that the payment of such note by Mrs. Larch was made on said date. It is substantially admitted by appellee that Mrs. Larch, before she paid the note, had been trying to get Walter to come back and make a settlement of all his matters. Mr. Gay had placed his note in the hands

of his attorney, Mr. Morgan, who was insisting on its payment. Walter's brother, Perry, who was one of the sureties on this note, had become interested and was using his influence to get his mother to get Walter to settle the note. Mrs. Larch, about this time, sent Mr. Morgan to Michigan to see Walter and get a settlement of the note. When Mr. Morgan returned, he brought with him a check given by a Mr. Crawford, for Walter, to be applied on said note and pursuant to some understanding and arrangement had between Walter and said Morgan, not disclosed by the evidence, Mrs. Larch then paid the balance of this note, after subtracting the amount of said Crawford check. A few days later Mrs. Larch went to Michigan and brought Walter back with her on January 1, 1909. On January 2, they went to the bank at Ambia and there had their settlement and Mr. Morgan made a memorandum of the different items that entered into the settlement of the Gay note. These items were made up of notes given to Aaron Larch, and held by his widow, Mrs. Larch, and by her assigned to Mr. Gay, a check given by Mrs. Larch on the funds in bank, and some cash. This memorandum also showed an item of expense and charges paid to Mr. Morgan on his trip to Michigan. The evidence of Mrs. Larch relative to the items which went to make up the $3,600 for which Walter gave his note, is fully and completely corroborated by other witnesses and by the memorandum, check and notes connected therewith. Mrs. Larch explained the taking of the new note for $3,440, instead of the $3,600 as originally agreed upon and shown by the settlement by saying that, on the day when her husband's estate was finally settled and the mortgage in question given, her son had a claim for expenses and services as executor of said estate which was allowed in the sum of $160 and subtracted from the amount of his indebtedness evidenced by the note before given and that a new note for $3,440 was written and dated December 2, 1908.

It is admitted by appellee that Walter Larch owed his

mother the $180 note and the $1,100 note before mentioned herein, with accumulated interest, and that to this extent a consideration is proven for the note which the mortgage in question was given to secure.   Nor is it denied by appellee that the undisputed evidence shows that Mrs. Larch paid the Gay note, but, as before indicated, it is insisted that such payment was voluntary and without the son's direction or knowledge and that this indicated a fraudulent intent on the part of Mrs. Larch to cheat, hinder and delay appellee in the collection of his note; that where a consideration is partly fraudulent it will taint the transaction in its entirety.

To the extent that a conveyance conceded to be made

5.   for the fraudulent purpose of cheating, hindering and delaying the creditors of the grantor becomes tainted and vitiated by such fraud in its entirety and should be held void in its entirety, appellee's contention is supported by authority.   *Reagan* v. *First Nat. Bank, etc.* (1902), 157 Ind. 623, 657, 61 N. E. 575, 62 N. E. 701.   But such contention assumes the existence of the fact in controversy.

As affecting appellee's contention we submit that the following well-settled propositions of law are important if not controlling:   (1) the burden of showing fraud was

6.   upon appellee, and is never presumed, but on the contrary the presumption is in favor of honesty and good faith until the contrary appears.   This presumption applies in cases of this character.   *Phelps* v. *Smith* (1888), 116 Ind. 387, 391, 17 N. E. 602, 19 N. E. 156.   (2) "Where a

7.   mortgage or other security is given to secure an honest debt, and is in a *bona fide* manner accepted for that purpose, the fact that the giving and accepting of such security may result in defeating the claims of other creditors, affords no legal or equitable grounds for complaint upon the part of the latter."   *Levering* v. *Bimel* (1897), 146 Ind. 545, 552, 45 N. E. 775.   This doctrine is settled in this State by many decisions, of which the following are a part.   *Lord*

v. *Fisher* (1862), 19 Ind. 7; *Wilcoxon* v. *Annesley* (1864), 23 Ind. 285; *Ball* v. *Barnett* (1872), 39 Ind. 53; *Cushman* v. *Gephart* (1884), 97 Ind. 46; *Grubbs* v. *Morris* (1885), 103 Ind. 166, 2 N. E. 579; *Gilbert* v. *McCorkle* (1887), 110 Ind. 215, 219, 220, 11 N. E. 296; *Hays* v. *Hostetter* (1890), 125 Ind. 60, 25 N. E. 124; *Straight* v. *Roberts* (1890), 126 Ind. 383, 26 N. E. 73; *Dice* v. *Irvin* (1887), 110 Ind. 561, 565, 566, 11 N. E. 488; *Fuller & Fuller Co.* v. *Mehl* (1893), 134 Ind. 60, 33 N. E. 773; *Simmons Hardware Co.* v. *Thomas* (1897), 147 Ind. 313, 318, 46 N. E. 645; *Owens* v. *Gascho* (1900), 154 Ind. 225, 228, 56 N. E. 224; *Nappanee Canning Co.* v. *Reid, Murdock & Co.* (1903), 159 Ind. 614, 619, 64 N. E. 870, 64 N. E. 1115, 59 L. R. A. 199; *State Bank* v. *Backus* (1903), 160 Ind. 682, 697, 67 N. E. 512; *City Nat. Bank* v. *Goshen Woolen Mills Co.* (1904), 163 Ind. 214, 71 N. E. 652. (3) "In this State it is settled by a long course of decisions that an embarrassed or insolvent debtor may lawfully prefer one or more of his creditors, by payment, mortgage, pledge or deed to the exclusion of the others. No statute forbids such preferences; no rule of law is understood to prevent them. * * * The fact that the person whose debt is so preferred is a wife or other near relative does not affect the validity of such preference." *Nappanee Canning Co.* v. *Reid, Murdock & Co., supra,* 619.

(4) "In the absence of statutory prohibition, it is neither a legal nor a moral wrong for a creditor to obtain payment of, or security for, an honest claim, even though he knows that others, equally deserving, will be thereby deprived of obtaining payment or security for their claims." *Gilbert* v. *McCorkle, supra,* 220. See, also, *Winslow* v. *Wallace* (1888), 116 Ind. 317, 327, 17 N. E. 923, 1 L. R. A. 179; *Harshman* v. *Armstrong* (1889), 119 Ind. 224, 225, 21 N. E. 662; *Clow* v. *Brown* (1906), 37 Ind. App. 172, 181, 72 N. E. 534. *Heiny* v. *Lontz* (1897), 147 Ind. 417, 422, 46 N. E. 665. (5) "One creditor, whose claim is honest, is not bound to abate any degree of vigilance in obtaining

security from his debtor, in order to give some other creditor an equal or superior chance to secure his claim.'' *Walling* v. *Lewis* (1889), 119 Ind. 496, 498, 21 N. E. 1108. See, also, *Carnahan* v. *Schwab* (1891), 127 Ind. 507, 510, 26 N. E. 67; *John Shillito Co.* v. *McConnell* (1891), 130 Ind. 41, 42, 26 N. E. 832; *Fuller & Fuller Co.* v. *Mehl, supra; Peed* v. *Elliott* (1893), 134 Ind. 536, 539, 34 N. E. 319; *First Nat. Bank, etc.,* v. *Dovetail Body, etc., Co.* (1896), 143 Ind. 550, 556, 41 N. E. 370, 52 Am. St. 435; *Levering* v. *Bimel, supra; Owens* v. *Gascho, supra; State Bank* v. *Backus, supra.* (6)

If it should be assumed that appellant, Elizabeth Larch, knew of the existence of appellee's note, and that she knew, when she first arranged with her son that he should give her the mortgage in question, that appellee had not filed his claim against her husband's estate (and this she says she did not know) and that she knew that by taking her mortgage she would thereby render appellee unable to collect his debt (this she also says she did not know); such knowledge alone would not be evidence of fraud if the debt which the mortgage was given to secure was *bona fide. First Nat. Bank, etc.,* v. *Farmers, etc., Bank* (1908), 171 Ind. 323, 344, 86 N. E. 417. *Dice* v. *Irvin, supra.*

It affirmatively appears from the evidence in this case that the mortgage in question was given to Elizabeth Larch to secure a *bona fide* indebtedness, and that such mortgage was agreed upon by said Elizabeth and her son before it was known by either of them that the appellee had not filed his note as a claim against the estate of Aaron Larch and at a time when the mortgagor and mortgagee did not know that such mortgage would in any way affect the collection of appellee's note; that the purpose of appellant, Elizabeth Larch, in securing such mortgage was to prevent litigation and make herself safe and with no intent to cheat, hinder or delay appellee in the collection of his debt. The evidence shows appellee's failure to collect his note, is due to his own neglect to file it against the estate

of Aaron Larch rather than to any fraud of the appellants. To allow appellee, under this evidence, to retain the preference in the collection of his note which the judgment of the trial court gives him, is to give him the same preference which such court by its judgment found to be fraudulent when secured by the vigilance and diligence of appellant, and would be contrary to the law as expressed in all of the authorities above cited. See, also, *Davis* v. *Schwartz* (1894), 155 U. S. 631, 640, 15 Sup. Ct. 237, 39 L. Ed. 289.

We have thus discussed at length the sufficiency of the evidence upon the question of fraud because it is the important question in the case and the one on which any future trial will probably have to be determined. Whatever might be our notion of the sufficiency of the evidence upon 11. this question, the present decision must be reversed on account of the insufficiency of the evidence on other material averments of the complaint. There is no evidence in the record showing that appellee had no other property subject to execution, either at the time of the execution of the mortgage in question, or at the time of the filing of suit herein. The authorities before cited herein indicate the necessity of such proof.

Judgment reversed with instructions to the court below to grant a new trial and for further proceedings consistent with this opinion.

NOTE.—Reported in 101 N. E. 127. See, also, under (1) 20 Cyc. 731, 732; (2) 20 Cyc. 743; (3) 20 Cyc. 784, 792; (4) 3 Cyc. 360; (5) 20 Cyc. 409; (6) 20 Cyc. 751; (7) 20 Cyc. 581; (8) 20 Cyc. 572, 597; (9) 20 Cyc. 472; (10) 20 Cyc. 590; (11) 20 Cyc. 794. As to the essential averments of pleadings attacking a conveyance as fraudulent, see 20 Am. Dec. 315. As to the intent of grantor as test of validity in respect of transfer alleged to be fraudulent, see 14 Am. St. 747. As to where the burden lies of proving fraud, see 11 Am. St. 758.