## JORDAN v. LYNCH LAND COMPANY ET AL.

[No. 12,284. Filed April 23, 1925.]

1. FRAUDULENT CONVEYANCES.—*Issuance of corporate stock for property transferred to the corporation is valuable consideration for the transfer.*—The issuance of stock in a corporation for property transferred to it is a good and valuable consideration therefor. p. 40.

2. FRAUDULENT CONVEYANCES.—*Conveyance of mortgaged land to corporation in exchange for stock therein of equal value not fraudulent.*—The conveyance of mortgaged land by embarrassed debtors to a corporation formed to enable them, by assigning the stock received therefor as collateral, to obtain a loan to pay

judgments and other debts was not fraudulent as to other creditors, the debtors' stock in the corporation being of substantially the same value as the land and equally subject to execution as their equity in the land.   p. 41.

3. FRAUDULENT CONVEYANCES.—*Insolvent debtor may prefer one or more creditors to exclusion of others, in absence of fraud.* —Except as prohibited by the Bankruptcy Law, an insolvent debtor may prefer one or more creditors to·the exclusion of others, by payment, mortgage, pledge or conveyance, in the absence of fraud.   p. 41.

4. FRAUDULENT CONVEYANCES.—*Insolvent debtor may organize corporation, transfer his property to it in exchange for stock of equal value, and assign such stock to one or more of his creditors.*—An insolvent debtor who is not within the provisions of the Bankruptcy Law has the right to organize a corporation, transfer his property thereto for stock of equal value, and to transfer the stock to a creditor as security for or in payment of his debt, so long as such transfer is not with intent to defraud, as the stock would be subject to execution the same as his land.   p. 41.

5. FRAUDULENT CONVEYANCES.—*Preference of creditors with fraudulent intent cannot be set aside unless creditor participated in fraudulent intent.*—The preference of one creditor over another, even when done with a fraudulent purpose, would not invalidate the transaction unless it was shown that the creditor participated in the fraudulent intent.   p. 42.

6. FRAUDULENT CONVEYANCES.—*Fraudulent intent of debtor who borrowed money to prefer one creditor does not vitiate loan unless lender participated in fraudulent intent.*—The organization of a corporation by insolvent debtors, the transfer of all their real estate to said corporation in exchange for stock of the corporation, to enable them to obtain a loan by depositing the stock as collateral, though done with fraudulent intent to pay some creditors in preference to others, would not invalidate the transaction by which the money was raised unless the lenders to whom the stock was pledged participated in the fraudulent intent.   p. 42.

From Sullivan Circuit Court; *William H. Bridwell,* Judge.

Suit by George M. Jordan against the Lynch Land Company and others.  From a judgment for defendants, the plaintiff appeals.  *Affirmed.*  By the second division.

*A. J. Padgett, A. A. Clark* and *Louis Meier,* for appellant.

*Cooper, Royse, Bogart & Gambill* and *Charles D. Hunt,* for appellee.

NICHOLS, J.—Action by appellant against the appellees to set aside an alleged fraudulent conveyance of real estate and to subject the land to sale to pay certain judgments.

The complaint was in one paragraph and alleged that certain conveyances of real estate made by appellees, Phoebe W. Lynch, and John B. Lynch, to the appellee Lynch Land Company were fraudulent and made for the purpose of defrauding appellant as a creditor. The appellees, except Herman F. Piel, who disclaimed, filed answers in three paragraphs, the first being a general denial, the second and third paragraphs pleading the six-year statute of limitations. The appellant replied to the second and third paragraphs of answer by general denial.

The cause was tried before the court and a finding was made for appellees on which judgment was rendered, from which after appellant's motion for a new trial was overruled, this appeal. The only error assigned is that the court erred in overruling appellant's motion for a new trial, the reasons for which being the insufficiency of the evidence to sustain the decision of the court, and that such decision is contrary to law.

It appears by the evidence that on December 3, 1913, appellee Phoebe W. Lynch held the legal title to 658 acres of land in Sullivan county, Indiana.

On said day, she and appellee John B. Lynch, her son, were indebted to various persons, and some judgments had been obtained against them. There was also a mortgage of $15,000 against said real estate. Prior thereto they had applied to appellee Mullikin to

aid them in obtaining a loan of $24,000 to be secured by mortgage on said real estate, the proceeds of which loan were to be used to pay off the existing mortgage and to pay said judgments and debts.

Mullikin had made application to the Wabash Savings, Loan and Building Association for such loan and said association refused to make a loan of $24,000 but did consent to make a loan of $21,000 on condition that said Mullikin would make them a loan of $3,000.

The debts and judgments then in existence against them in addition to said mortgage amounted to approximately $9,000 and it was necessary to obtain a loan of $24,000 in order to clear up the real estate and pay off the existing debts and judgments.

As said association was not willing to loan in excess of $21,000 at that time, Mullikin agreed to loan $3,000 to be secured by a second mortgage. It was also a condition of the loans that the real estate owned by appellee Phoebe should be conveyed to appellees John B. Lynch and Holder as trustees in trust to manage the property and collect the rents and profits therefrom and after paying to Phoebe such funds as were necessary for her support and maintenance, in the opinion of the trustees, the remainder was to be applied upon the indebtedness. This conveyance was made on said day, the trustees being given the power to sell during the lifetime of Phoebe, with her consent, and after her death, having full power to sell in their discretion. On said day she also conveyed to John 160 acres of the real estate, to which 160 acres, Phoebe had the legal title, but of which John was equitably the owner. On said day, Phoebe executed to the Wabash association her notes and mortgages for $21,000 and executed to Mullikin her second mortgage for $3,000. The proceeds of these loans were received by Mullikin and were disbursed by him in payment of the existing mortgage on

the property and the remainder in payment of said judgments and indebtedness. The trustees continued to manage the real estate from December 3, 1913, to July 14, 1916.

In May, 1916, said appellees Lynch went to Mullikin and represented to him that various judgments had been obtained against them, that they were indebted in addition to such judgments in considerable amounts, that such indebtedness was due and suits would be brought against them and that it would take approximately $7,000 to clear up the judgments and debts owing by them in addition to the mortgages which had theretofore been executed.

A list of these judgments and debts showed an aggregate of approximately $7,000 but such list did not include the indebtedness of the appellant. This list was submitted to the Wabash association with a request that the mortgage of the association be increased from $21,000 to $25,000. The Wabash association was unwilling to make the additional loan except on condition that the title to the property should be placed in such condition that the association would be able to sell the property without foreclosure in case they failed to pay the mortgage or the interest, and also in such condition that the association would have control of the property, and be able to see that all the income therefrom be applied upon the payment of taxes, interest and the reduction of the indebtedness and also required that Mullikin should advance the $3,000 required to pay the remaining indebtedness which would not be paid by the $4,000 additional loan which the association was requested to make.

A plan was formulated which consisted of the formation of a corporation, to which should be transferred the title to the real estate, and, in consideration of such transfer, appellees Lynch were to receive stock in the

corporation in proportion to their ownership of the land. The association would then loan them $4,000 and Mullikin would loan them $3,000 additional, which advances were to be used in the payment of the judgments and indebtedness against them and, to secure these additional loans, appellees Lynch were to assign their stock in the corporation to trustees to be designated by the association, as collateral security for such loans with power to vote such stock while so held. In accordance with this plan, the Lynch Land Company was duly incorporated and organized, after which a deed for the real estate was executed by appellees Lynch, and Holder and Lynch as trustees, to the Lynch Land Company and 995 shares of the capital stock of the Lynch Land Company were issued to appellees Lynch, John receiving 242, and Phoebe 753, shares. The remaining five shares of the stock of such company were subscribed for and issued to the five directors, as qualifying shares, to be paid for as called by the board of directors of the Lynch Land Company. The stock of the Lynch Land Company issued to the directors has never been paid for and the board of directors has never called for the payment of the same.

After the stock had been issued to appellees Lynch, as above set out, they each executed their collateral notes for $4,000 to the Wabash association and for $6,000 to Mullikin, and assigned the certificates of stock issued to them to named trustees in trust to hold such stock as collateral for such loans of $4,000 and $6,000 respectively, and also as collateral for the payment of any other sums due from them to the association. The stock so assigned was thereupon retained by the Lynch Land Company, and a new certificate for 995 shares was issued to said trustees and such certificate is still held by them. Thereafter, $4,000 additional was paid to Mullikin for use of the Lynches and he dis-

bursed it and the $6,000 advanced by himself in payment of judgments and debts of appellees Lynch and in payment of the mortgage of $3,000 theretofore held by said Mullikin.

That since July 14, 1916, the board of directors of the Lynch Land Company has had control of the 658 acres of real estate here involved and Mullikin, as agent of Lynch Land Company, has had the active management and supervision thereof. The proceeds of said real estate have been used for the purpose of paying taxes and interest and the upkeep of said real estate.

In October, 1920, the note and mortgage to the Wabash association became due, and as it was not willing to extend the note and mortgage, the directors of the Lynch Land Company procured a loan of $25,000 from the Union Savings Association of Terre Haute, Indiana, secured by a mortgage on said real estate, the proceeds of which loan were used to pay the $21,000 mortgage to the Wabash association and the $4,000 note to the Wabash association executed on July 14, 1916.

The purpose of the formation of the Lynch Land Company and of the assignments of the stock of the Lynches to the trustees was to induce the Wabash association to make an additional loan of $4,000 and to induce Mullikin to make an additional loan of $3,000 in July, 1916. The reason for such action was that the Wabash association and said Mullikin were unwilling to make any additional loan to the Lynches unless the title of the real estate was in such condition that in case the mortgage and notes were not paid, the association and Mullikin could have the property sold without foreclosure, and in such condition that the association could control the management of the property during the time that the loan was unpaid.

There is some difference of opinion as to the value of the land transferred to the Lynch Land Company

but there is evidence that it was worth from $50 to $60 an acre. The original indebtedness upon which the judgments of appellant are based were incurred by appellees Lynch prior to December 3, 1913. The suits upon which judgment was obtained by appellant were instituted about August 1, 1916, and judgment was obtained in both cases in January, 1917. On January 2, 1917, appellant obtained a judgment against appellees Lynch for $309.85 and such judgment is unpaid. On January 2, 1917, appellant and one Peil obtained judgment against appellees Lynch for $2,264, and such judgment is unpaid. Peil's interest in this judgment was assigned to appellant. Execution has been issued upon each of the above judgments.

It is the sole contention of appellant that the finding of the court is contrary to law, appellant stating that there is no controversy as to the facts proven. If then, on the foregoing facts, the law is with appellees, the judgment should be affirmed, otherwise, reversed. Appellant says that the vital controlling question is: Was the conveyance of the 658 acres of land in controversy by the Lynches to the Lynch Land Company a *bona fide* sale, and for a valuable consideration?

It clearly appears from the evidence that the land company was formed for the express purpose of enabling the Lynches to borrow money for the purpose of paying their lawful debts, and that all the money thereby borrowed was used for that purpose. It does not appear that there was any secret agreement by which the land was to be held for the benefit of the grantors; on the contrary, it appears that the legal effect of the whole transaction was manifest on the face of the instruments executed in its consummation. Substantially all of the stock of the corporation was issued to the Lynches in payment for the land transferred to the corporation. Of the 1,000

shares of the corporation, 995 were issued to the Lynches, the remaining five being used to enable the directors to qualify as such; so that the corporation that holds the land is practically owned by the Lynches. That the issuance of stock in a corporation for property transferred to it is a good and valuable consideration therefor, see *Coffin* v. *Ransdell, Rec.* (1887), 110 Ind. 417, 11 N. E. 20; *Bruner, Rec.,* v. *Brown* (1894), 139 Ind. 600, 605, 38 N. E. 318; *Haskell, Rec.,* v. *Gardner* (1910), 50 Ind. App. 1, 93 N. E. 458.

The Lynches holding, as they did, substantially all of the stock of the corporation, such stock had substantially the same value as the land which constituted the assets, and the effect of the transaction was simply to change the form of their estate. They had a right to use their land, and, when converted into stock, to use the stock for the purpose of obtaining a loan with which to pay judgments and other debts that were pressing them, and having assigned the stock as collateral for that purpose, their equity therein was as much subject to execution as their equity in the land after the execution of a mortgage to secure the needed loan would have been. From this viewpoint, we do not see how appellant has been harmed, for the equity in the shares of stock are as readily sold as the land subject to the mortgage would have been. There is no evidence, or contention, that the judgments and other debts to pay which the Lynches borrowed the money were not *bona fide* indebtedness of the Lynches, and such being the case, they had a right to prefer them, and for that purpose, to use their property for the purpose of borrowing money, whether by mortgage, or in the manner hereinbefore set out. It is the law that an insolvent debtor who is not subject to the provisions of the Federal Bankrupt Law may prefer one or more of his creditors

to the exclusion of others, by payment, mortgage, pledge or conveyance, in the absence of fraud. *Young* v. *Merle Heanly Mfg. Co.* (1915), 184 Ind. 403, 110 N. E. 669; *Larch* v. *Holz* (1913), 53 Ind. App. 56, 65 101 N. E. 127. And fraud is never presumed. *Larch* v. *Holz, supra.* In *Gardner* v. *Haines* (1905), 19 S. D. 514, 104 N. W. 244, it was held that where a debtor has, as here, the right to prefer one creditor to others, he also has the right to organize a corporation, transfer his property thereto for stock, and to transfer the stock to a creditor in payment of his debt, so long as such transfers are not with intent to defraud, and that the mere transfer of property to a corporation for capital stock therein does not hinder or delay creditors, the stock being subject to execution. The case, in its facts and principles involved, is much like the instant case.

Even if it appeared by the evidence that the purpose of the Lynches in paying other creditors in preference to appellant was fraudulent, this, within itself would not vitiate the transaction by which the money was raised by them for that purpose unless it also appeared that the parties from whom they obtained the money participated in the fraudulent intent. *Straight* v. *Roberts* (1890), 126 Ind. 383, 26 N. E. 73; *Owens* v. *Gascho* (1900), 154 Ind. 225, 56 N. E. 224.

In this case, it appears that when the Lynches made application for the loan, out of which the transaction challenged grew, the Wabash association and Mullikin required that they furnish a complete list of their debts and that the Lynches did furnish a list, omitting therefrom, however, appellant's debt. There is no evidence whatever, that the association or Mullikin had any knowledge of this omission.

When the money was furnished, it was applied to the full discharge of all the debts listed. There is certainly

no appearance of fraud in anything that the association or Mullikin did. We see no reason for disturbing the decision of the trial court.

Its judgment is therefore affirmed.