BESSIE ISHIE, as Administratrix, etc., of GEORGE ISHIE, Deceased, Appellant, Respondent, *v.* ALFRED E. NORTON COMPANY, Respondent, Appellant.

First Department, May 17, 1918.

**Negligence — action by wife for death of husband — defense — fraud in procuring release — cause of action for such fraud does not survive death of person defrauded — pleading.**

A cause of action for alleged fraud in procuring a release from damages for personal injuries, in which the release is affirmed, does not survive the death of the defrauded claimant, and hence is not maintainable by his personal representatives.

Such a cause of action did not survive at common law, and is not authorized by section 120 of the Decedent Estate Law.

The only action maintainable by the personal representatives of a decedent which, whatever its form, has its real basis in personal injuries to the decedent, resulting in his death, is one under the statute, and this irrespective of whether evidence might be adduced to show that, growing out of the injury, pecuniary damages were sustained which lessened the estate of the decedent.

The cause of action for deceit under the statute regulating abatement and survivorship does not constitute an injury to the property right or interest of the plaintiff, and, therefore, cannot survive the death of either the injured party or wrongdoer.

Neither can the action be maintained on the theory that, irrespective of the injuries inflicted upon the decedent, the administratrix had a cause of action under the statute for the death of her husband, and that the alleged fraud in effect settled and extinguished her cause of action.

Where, in an action by an administratrix under section 1902 of the Code of Civil Procedure to recover damages for the negligence of the defendant, causing the death of her husband, the defendant answers by setting up a release, the plaintiff claiming the release to have been procured by fraud, should so allege by way of reply.

APPEAL by the plaintiff, Bessie Ishie, as administratrix, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 27th day of July, 1916, granting defendant's motion for a new trial herein on the ground of newly-discovered evidence.

Appeal by the defendant, Alfred E. Norton Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 16th day of November, 1914, upon the verdict of a jury for $16,244, and also from an order entered in said clerk's office on the 17th day of November, 1914, denying defendant's motion for a new trial made upon the minutes.

*Herman Gottlieb* of counsel [*Marcuson Brothers*, attorneys], for the plaintiff.

*E. Clyde Sherwood* of counsel [*Amos H. Stephens*, attorney], for the defendant.

SHEARN, J.:

The defendant has appealed from a judgment in favor of the plaintiff for the sum of $16,405.42, entered on the

verdict of a jury, and from an order denying a motion for a new trial; and the plaintiff has appealed from an order setting aside the verdict and granting the defendant's motion for a new trial upon the ground of newly-discovered evidence.

Under all the circumstances of the case, we are of the opinion that it does not appear that the trial justice improperly exercised the discretion vested in him by ordering a new trial. In view of the fact that there is to be a new trial, it seems advisable to determine the theory upon which the action is maintainable, for in our opinion the action was tried and submitted to the jury upon a wholly erroneous theory. The action is a peculiar one and presents an interesting question.

The plaintiff sues as administratrix of the goods, chattels and credits of her husband, George Ishie, deceased. The cause of action set forth in the original complaint was the ordinary one under section 1902 of the Code of Civil Procedure, to recover $30,000 damages for the negligence of the defendant by which the decedent's death was caused. The complaint alleged that on or about the 2d day of November, 1911, the plaintiff's intestate, a painter by trade, being employed by the defendant, and while engaged in discharging his duties as such employee, was precipitated and caused to fall from a ladder, sustaining injuries which resulted in his death on or about the 18th day of February, 1912. The answer to this complaint alleged as a defense that on or about the 14th day of December, 1911, upon claim made and suit brought by the said George Ishie against the defendant for damages on account of personal injuries alleged to have been sustained by him at the time and place mentioned in the complaint, the defendant paid to the said George Ishie the sum of $500 in full settlement of the said claim, and that thereupon the said George Ishie, for and in consideration of said payment, released and discharged under seal this defendant from all claims, and that by reason thereof the said George Ishie accepted, had and acknowledged full accord and satisfaction of any and all claims and causes of action arising out of the matters set forth in the complaint, and that no other or further action arising out of such matters can be maintained against the defendant. Thereafter the plaintiff served an

amended complaint retaining substantially all of the allegations of the original complaint, and adding thereto allegations that on or about the 22d day of December, 1911, the defendant falsely and fraudulently represented to plaintiff's intestate that the injuries which he sustained were slight and of no moment and that he would fully and completely recover from the same within a month's time and be as strong as ever, well knowing that the injuries were progressive and permanent and would necessarily prove fatal; that the defendant further falsely and fraudulently represented to plaintiff's intestate that he did not have any cause of action against the defendant, and that he would immediately give him re-employment, and that the sum of $500 and the re-employment which it offered to him were more than he could recover in any action for the injuries sustained; that plaintiff's intestate relied upon the representations, and, overcome and persuaded by such representations, was induced to sign and deliver a general release; and further that at the time of the execution and delivery of the release plaintiff's intestate was of unsound mind and unable to comprehend the nature of the transaction, which was well known to the defendant; and that by reason of the premises plaintiff has sustained damages in the sum of $29,500. Defendant answered, again setting up the release as a separate defense. In opening the case to the jury, plaintiff's counsel stated that the plaintiff affirmed the release and claimed damages for the alleged fraud practiced in obtaining it, and that the damages that he would claim would be " an amount of money which you will find the plaintiff [doubtless meaning plaintiff's intestate] would be entitled to receive, less the sum paid to him." Upon the opening and the pleadings, defendant's counsel moved to dismiss the complaint, among other grounds, because " it states a cause of action in negligence and not the affirmation of the release in a suit in damages for the fraud " and that the complaint failed to show that the $500 paid by the defendant to the deceased was returned or tendered to the defendant by either the decedent or the administratrix. The motion was denied.

While the issue of negligence was sharply litigated, the main issue related to the alleged fraud. During the examina-

tion of the plaintiff she was permitted, over the objection of the defendant as " not .a proper measure of damage," to show the number of children surviving and their ages, which would have been usual and proper in an action under the statute, but which, of course, had no relevancy in an action to recover damages for fraud. The court submitted the issue of fraud to the jury and charged that " the measure of damages in a case like this is the money loss which the next of kin, in this case the widow and two children, have suffered by reason of the death of the husband," and followed this with the usual instructions in death cases. To this the defendant's counsel excepted. After various other exceptions had been taken and requests passed upon, the court acceded to the request of plaintiff's counsel " to modify the charge with respect to the damages " and " to charge the jury that in assessing the damages the jury should award to the plaintiff such an amount *as Ishie would have settled his case for*, had these false representations not been made, taking into consideration his probability of life, his earnings, the nature and extent of his injuries and the probability of his recovery," and the jury was told to " decide for yourselves from the evidence as best you can what the deceased would have settled for had he not been deceived, if you find he was deceived, and then from that amount deduct the sum of five hundred dollars." The defendant's counsel took no exception to this charge. Notwithstanding the confused state of the pleadings, the rulings upon evidence offered to establish damage and the different theories of damage as laid down in the charge, it is quite apparent that the cause of action intended to be set forth in the amended complaint and as finally submitted to the jury affirmed the release and was for damages for alleged fraud in procuring the release. As the action is to be retried, there is thus presented the question whether such a cause of action is maintainable; that is to say, if such a cause of action ever had any existence, did not it accrue to the decedent alone and die with him?

Considering the cause of action as one to recover damages for fraud, it is clear that the fraud, if any, was actually practiced upon the decedent and that it consisted in cheating him into accepting as a compromise of a valid claim in dispute

a sum less than he could have reasonably demanded and the defendant would reasonably have allowed as a final compromise above and beyond the $500 in fact allowed and received. (*Urtz* v. *N. Y. C. & H. R. R. R. Co.*, 202 N. Y. 170, 176.) The right of the person actually so defrauded to affirm and stand upon the release and recover damages for the fraud is well settled. (*Gould* v. *Cayuga County National Bank*, 99 N. Y. 333; *Urtz* v. *N. Y. C. & H. R. R. R. Co.*, *supra*.) But does such a cause of action survive and is it maintainable by the personal representatives of the person defrauded?

It is conceded that at common law such a cause of action would not survive. Statutory authority must be found to overrule the common law, and plaintiff's counsel contends that this is supplied by a proper construction of section 120 of the Decedent Estate Law (Consol. Laws, chap. 13 [Laws of 1909, chap. 18], as added by Laws of 1909, chap. 240, § 16), which reads as follows:

" § 120. *Actions for wrongs, by or against executors and administrators.* For wrongs done to the property, rights or interests of another, for which an action might be maintained against the wrong-doer, such action may be brought by the person injured, or after his death, by his executors or administrators, against such wrong-doer, and after his death against his executors or administrators, in the same manner and with the like effect in all respects, as actions founded upon contracts. This section shall not extend to an action for personal injuries, as such action is defined in section thirty-three hundred and forty-three of the Code of Civil Procedure; except that nothing herein contained shall affect the right of action now existing to recover damages for injuries resulting in death."

Section 3343 of the Code of Civil Procedure, referred to in the provision just quoted, provides:

" 9. A ' personal injury ' includes libel, slander, criminal conversation, seduction, and malicious prosecution; also an assault, battery, false imprisonment, or other actionable injury to the person either of the plaintiff, or of another.

" 10. An ' injury to property ' is an actionable act, whereby the estate of another is lessened, other than a personal injury, or the breach of a contract."

Citing cases holding that a cause of action for injury to the property of a decedent by fraud and deceit may be maintained by the personal representatives of the decedent, plaintiff's counsel attempts to support his contention that the cause of action in the case at bar survived by arguing that the cause of action that the decedent had, because of the alleged fraud practiced upon him, was for an injury to property, whereby his estate was lessened, other than a personal injury. But the authorities are all the other way. The case of *Urtz* v. *N. Y. C. & H. R. R. R. Co.* (*supra*), which is strongly relied upon, has no bearing whatever upon the point. There the cause of action fraudulently procured to be settled was one under the statute belonging *to the administratrix* and the settlement was made by the administratrix. Neither does *Gould* v. *Cayuga County National Bank* (*supra*) involve the question of survival. *Haight* v. *Hayt* (19 N. Y. 464) was plainly one involving a wrong to property interests, the alleged fraudulent representations relating to the matter of incumbrances on a piece of real property. Such *dicta* as there are in the case in any wise sustaining plaintiff's contention were expressly overruled in *Hegerich* v. *Keddie* (99 N. Y. 258). The case of *Byxbie* v. *Wood* (24 N. Y. 607) was an action to recover certain sums of money which it was claimed the defendant had obtained from the plaintiff's assignor by false statements. In *Lyon* v. *Park* (111 N. Y. 350) the fraud plainly involved a property right, for it was alleged that the defendants had induced by fraud the transference to one of them of a valuable contract. *Cregin* v. *Brooklyn Crosstown R. R. Co.* (75 N. Y. 192), also cited by the plaintiff, is, in effect, an authority against plaintiff's contention. That case involved the question whether *the husband's* right of action arising out of injuries *to his wife* abated upon the death of the husband. The court held that such an action was within the provision of the Revised Statutes (2 R. S. 447, § 1) preserving from abatement actions "for wrongs done to the property, rights or interests of another," and as not included in the exception in the provision following (Id. 448, § 2) of "actions on the case for injuries to the person of the plaintiff." The court distinguished between that part of the cause of action for injury to the husband's property rights and that part which sought

damages for injury to the personal comfort of the husband, and refused to hold that the action was abated in its entirety since the *gravamen* of the wrong was not injury to the personal feelings and comfort of the husband but was the pecuniary injury which he suffered, represented by the money value of his wife's services, of which he was deprived, and his expense in effecting her cure.

On the other hand, the opinion of RUGER, Ch. J., in the leading case of *Hegerich* v. *Keddie* (*supra*) shows beyond a doubt that the wrong done by negligently causing death is not done to the property rights or interests of the decedent, and that the cause of action therefor, provided by the statute, does not purport to be in any respect a derivative one but is founded upon a personal wrong, already actionable by existing law in favor of the party injured. If the wrong consisted in an injury to the property or estate of the person killed, the cause of action would survive, but in holding in the *Hegerich* case that a cause of action for negligence resulting in death, given by statute to the representative of the decedent, is abated by the death of the wrongdoer, the court said: " The wrong defined indicates no injury to the estate of the person killed, and cannot either logically or legally be said to affect any property rights of such person, unless it can be maintained that a person has a property right in his own existence. The property right, therefore, created by this statute is one existing in favor of the beneficiaries of a recovery only, and depends for its existence upon the death of the party injured. It had no previous life and cannot be said to have been injured by the very act which creates it. * * * If, therefore, we consider this cause of action as a property right, it is as such, a right based upon a tort, and, except as otherwise provided by the statute creating it, must be governed by the existing rules of law applicable to such causes of action." " The cause of action is obviously the wrongful act, and the pecuniary injuries resulting afford simply a rule to determine the measure of damages."

The cause of action is single and consists of injury to the person. This was the cause of action which the decedent settled, and if he was cheated into parting with his cause of action it was not a property right that he thereby lost

and his estate was in no respect lessened. His right to recover damages for the fraud would be based not upon any property right impaired, but upon the original injury to his person. As such a right of action is not assignable and does not survive, it seems clear that the cause of action for fraud, grounded upon the personal injury, could not survive.

Plaintiff's counsel contends, however, that " the foundation of the claim is not of the slightest importance except to show that it was well founded," and that " if one is induced by fraud to settle a claim which is worth $2,000 for $1,000, he is just $1,000 poorer, and his estate is just $1,000 less by reason of the fraud, whether his claim was for a breach of contract, tort to property or tort to the person." This is plausible but it is not sound. If the " estate " of the decedent could be said to have been lessened by an inadequate compromise of a cause of action for personal injuries, that could only mean that the cause of action was a property right of ascertainable value, in which case it would be assignable, which of course it is not, and would survive, which it does not. Furthermore, a claim is not " worth " anything except as it represents a valid cause of action, and the Court of Appeals has squarely held in *Urtz* v. *N. Y. C. & H. R. R. R. Co.* (*supra*) that in order to recover damages for fraud in procuring a settlement or compromise it is essential to establish as a basis the existence of a valid cause of action. If the decedent had lived and had brought an action for fraud practiced upon him in procuring the settlement, the basis of his right to recover would have been that he had a valid cause of action for personal injuries. To permit the administratrix to maintain the same cause of action, necessarily having the same foundation, would be tantamount to holding that the right to recover for the personal injuries survived.

Even if it were held that the alleged fraudulent settlement involved an injury to the property of the decedent and lessened his estate, it would not follow that the administratrix could recover the consequent damage where the wrong had its origin in a personal injury. In *Murray* v. *Usher* (117 N. Y. 542), which was an action brought to recover damages for negligence causing the death of plaintiff's intestate, the defendants sought to prove that they had paid the expenses

of the support and maintenance of the intestate after the injury up to his death, and of his proper interment. The evidence was rejected, and in holding that there was no error the court said: " The expenses incurred by a person injured for medical treatment, or for support between the happening of the injury and the death resulting therefrom, are not recoverable by his administrator in the statutory action given by the act of 1847;* and it would seem to follow that the payment of such expenses by the wrongdoer cannot be shown either in bar or in mitigation of damages."

Yet such expenses, of course, if paid by the person injured, would tend to deplete his estate. I think it is clear that the only action maintainable by the personal representatives of a decedent which, whatever its form, has its real basis in personal injuries to the decedent resulting in his death, is one under the statute, and this irrespective of whether evidence might be adduced to show that, growing out of the injury, pecuniary damages were sustained which lessened the estate of the decedent. As said by the Court of Appeals in *McKay* v. *Syracuse Rapid Transit Railway Co.* (208 N. Y. 359, 363), in an action brought by a husband as administrator, under the statute, to recover for the negligent killing of his wife, the point being whether his contributory negligence was a defense: " There can be no doubt that the plaintiff's negligence would not have defeated a recovery by the wife if she had lived. Her cause of action abated upon her death, but the Legislature has substituted a new action and has specified the condition upon which it may be maintained, *i. e.*, the right of the injured person to maintain an action if death had not ensued. While the measure of damages is different (Code Civ. Proc. § 1904) the right of the personal representative to recover depends solely on the right of the injured person to recover, if living, unless we are to read something into the statute."

The case of *Price* v. *Price* (75 N. Y. 244) is very much in point. That was an action to recover damages for alleged fraud on the part of the defendant, in that he induced plain-

---

*See Laws of 1847, chap. 450, as amd. by Laws of 1849, chap. 256, and Laws of 1870, chap. 78; now Code Civ. Proc. § 1902 *et seq.*—[Rep.

tiff to marry and cohabit with him by means of false and fraudulent representations that his wife was dead and that he was in all respects competent to marry. The appeal was from an order denying a motion to substitute the executors of defendant in his stead, he having died since the commencement of the action, and to revive the action against them. The question turned on whether the cause of action survived. Construing the complaint to show that the action was one " purely for a wrong in inveigling the plaintiff by false representations and deceit, into a void, or voidable marriage, followed by several years of cohabitation," and considering the appellant's claim that the gist of the action was an injury to property, to pecuniary rights and interests of the plaintiff, the court said, referring to the statute (2 R. S. 447, § 1; Id. 448, § 2; now Decedent Estate Law, § 120, as added *supra*): " It has been decided that wrongs mentioned in the first section are such only as injure property or estate. [*Wade* v. *Kalbfleisch*, 58 N. Y. 282; *Cregin* v. *Brooklyn Crosstown R. R. Co.*, 75 id. 192.] The wrongs alleged here are merely personal wrongs, inflicting injury to the person of the plaintiff, which at common law would have been redressed by an action on the case. They did not affect her property or estate." In other words, the cause of action for deceit, under the statute regulating abatement and survivorship, did not constitute an injury to the property rights or interests of the plaintiff, and, therefore, could not survive the death of either the injured party or the wrongdoer.

Neither can the action be maintained on the theory that, irrespective of the injuries inflicted upon the decedent, the administratrix had a cause of action under the statute for the death of her husband and that the alleged fraud in effect settled and extinguished her cause of action. As pointed out in *Littlewood* v. *Mayor, etc.* (89 N. Y. 24), while the Legislature has the power to exact a double liability for negligent injury, *i. e.*, a liability to the injured party, and upon his death from such injury after a recovery of damages, to his next of kin, it was not its intention so to do by the act of 1847. The intention was " to provide for the case of an injured party who had a good cause of action, but died from his injuries without having recovered his damages, and in such a case to

withdraw from the wrongdoer the immunity from civil liability afforded him by the common law rule that personal actions die with the person, and to give the statutory action as a substitute for the action which the deceased could have maintained had he lived."

But it does not at all follow from the foregoing that the plaintiff is without a remedy. Her action was originally begun upon the proper theory, namely, as an ordinary action under the statute for the cause of action ensuing upon the death of the intestate caused by the defendant's negligence. When the defendant answered by setting up the release, the validity of its defense depended upon the validity of the release. If the decedent did actually release his cause of action by a valid instrument or if there was a genuine accord and satisfaction, of course that extinguished his cause of action and there could be no recovery by the plaintiff, but if, on the other hand, as the plaintiff should have alleged by way of reply but has alleged, as it may be held, by way of anticipating the defense of accord and satisfaction, the release was procured by fraud, there was no accord and satisfaction and no valid release, and the plaintiff's right of action existed just as if the paper called a release had never been signed.

The action should, therefore, be retried as an ordinary one under the statute, with the additional issue as to whether the release, relied upon by the defendant, was procured by fraud.

The question may arise whether the plaintiff must tender to the defendant the sum paid to the deceased in settlement or whether it will suffice to offer in the pleadings or upon the trial to have such sum credited upon any possible recovery. This matter has not been briefed or argued and we do not now decide it.

The order for a new trial is affirmed, with costs, and the appeal from the judgment is dismissed, without costs.

CLARKE, P. J., LAUGHLIN and SMITH, JJ., concurred; PAGE, J., concurred in result.

Order affirmed, with ten dollars costs and disbursements. Appeal from judgment dismissed, without costs.