ROCHESTER BRIDGE COMPANY ET AL. *v.* MCNEILL.

[No. 23,227. Filed March 26, 1919. Rehearing denied June 27, 1919.]

1. FRAUD.—*Settlement for Personal Injuries.*—*Effect on Right of Action.*—Though an unrescinded contract for settlement of damages for personal injuries precludes a recovery for negligence causing the injury, it does not preclude an action for fraud whereby the settlement was brought about. p. 436.

2. FRAUD.—*Pleading.*—*Opinions.*—A statement, though based on the expression of an opinion, may amount to actionable fraud, if it is a mere contrivance of fraud, or if the person to whom it was expressed has justly relied on it and has been misled, or when it is coupled with other circumstances. p. 436.

3. FRAUD.—*Nominal Damages.*—Where one procures a contract by fraud, the defrauded party may recover at least nominal damages. p. 438.

4. PLEADING. — *Complaint.* — *Demurrer.* — Though a complaint states a cause of action for only nominal damages, the overruling of a demurrer thereto on the grounds of insufficiency will be sustained on appeal. p. 438.

5. FRAUD.—*Settlement of Claim.*—*Complaint.*—*Validity of Claim.*—A complaint for substantial damages caused the plaintiff by the defendant's fraud in procuring a contract of settlement for personal injuries, to warrant a recovery of such damages, must show not only the fraud but also a valid claim against the defendant for the original injury. p. 439.

6. PLEADING.—*Demurrer.*—*Admissions.*—A demurrer to a complaint admits not only the facts directly and specifically al-

leged but also all facts that can be implied by reasonable and fair intendment.   p. 439.

- 7. FRAUD.—*Complaint.*—*Fraudulent   Release   Contract.*—*Elements of Cause.*—The essential elements of a cause of action for damages based on the fraudulent procurement of a settlement of a claim for personal injuries are representations, falsity, scienter, deception and injury.   p. 439.

8. FRAUD.—*Liability for Representations.*—"*Actionable Fraud.*" —A party who makes an untrue representation as to a material fact, not knowing whether it is true or untrue, though he believes it to be true, with the intention that another shall act upon it, and such other does act thereon to his injury, is guilty of "actionable fraud."   p. 439.

9. FRAUD.—*Measure of Damages.*—*Settlement for Injury.*—*Instructions.*—The measure of damages for a fraudulent procurement of a settlement of a claim for personal injuries is the amount to which the plaintiff was entitled under all the circumstances on the day of the trial, less any amount received at such time; hence an instruction proceeding upon the theory of an award as of the date of the trial was erroneous.   pp. 440, 442.

Appeal from Fulton Circuit Court; *Smith N. Stevens,* Judge.

Action by Walter E. McNeill against the Rochester Bridge Company and another. From a judgment for the plaintiff, the defendant appeals. *Reversed.*

*Holman, Bernetha & Bryant* and *M. A. Baker,* for appellants.

*Charles C. Campbell* and *Edward E. Murphy,* for appellee.

MYERS, J.—This is an action by appellee against appellants founded on an alleged deceit by false representations. Appellants' separate demurrer to the complaint for want of facts was overruled, whereupon they answered by general denials. Trial by jury, verdict in favor of appellee for $14,125, which during the pendency of the motion for a new trial was reduced by a remittitur to $7,500. Each of the appellants for error

rely on the overruling of its demurrer to the complaint, and the overruling of its motion for a new trial.

In substance, it appears from the complaint that on May 7, 1913, appellant bridge company was engaged in operating a plant at Rochester, Indiana, in which by the use of various machines it prepared from steel plates structural work for steel bridges. Appellee on that date, and as an employe of the bridge company, was engaged in operating one of these machines, and while pursuing his work of punching holes in a steel plate a particle of steel was thrown off, striking him in his left eye, whereby he was permanently injured. On May 10 he was taken to a hospital at Rochester, Indiana, for treatment, where he remained about twenty days. On May 14, and while he was a patient at the hospital, he was taken to South Bend by the bridge company, and there examined by an X-ray expert. On May 23 appellee executed a contract whereby he received from the bridge company $105 in full settlement for all damages incurred by reason of said injuries. On July 3 he resumed his work with the bridge company, but later, about October 1, on account of the injury to his eye, he returned to the hospital for further treatment, resulting in the removal of his eye. The latter part of October he recommenced work with the bridge company, but soon became weak, nervous and sick, and quit this employment.

The complaint also charges the bridge company with negligence in failing to furnish appellee with a reasonably safe punching machine, and in detail describes wherein the machine was defective and unfit for use; that the company negligently failed to keep a certain set screw inserted through one side of the groove block which was a part of the machine, and showing the purpose and use of this set screw which was also alleged to be out of repair, and no longer fit for the purpose for

which it was intended, also negligence in attempting to hold the screw in place by tying the same with cotton strings, all to the knowledge of the bridge company and unknown to appellee.

It also appears that at the time of the aforesaid injury the bridge company was insured by the appellant insurance company against loss by damage to life, health and body of the servants of which appellee was one. "That said bridge company and said insurance company, through their agents and servants, entered into a plan and conspiracy of deceit to cheat and defraud this plaintiff out of his said cause of action and damages, and immediately after said accident took place, and as a part of the plan, they took charge of the plaintiff, took him to the hospital and to an X-ray expert and employed physicians and medical attendants, and had him examined, cared for and treated to cure him if possible, if not to learn the extent of his injuries so they might further their plan of conspiracy, and on May 23, 1913, in pursuance of said plan, and while the plaintiff was still under said charge at said hospital and suffering great pain, both in mind and body, and could not see to read and was unfit to do business, they called upon the plaintiff at the hospital and stated to him that they had consulted physicians and knew that his injuries were only temporary; that his eye would be fully restored and would be well in a few days; that the X-ray showed there was nothing the matter with his eye; that his only damage would be the loss of a short period of time and compensation for medical services; that they were willing to make the plaintiff a donation of a sum equal to plaintiff's loss of time and cost of medical services for such temporary injuries; that if he went to court he could get no more than pay for such loss of time and medical services, and offered to pay this plaintiff for such loss of time $105.00 and for said

medical services, and asked him to sign a receipt as evidencing a gratuity and not as a settlement. The plaintiff believed and relied on said statements as true, accepted said sum of $105.00 and did sign a receipt. That the essential parts of said statements were false; that the plaintiff's injuries were and are permanent; that said receipt was a contract for a full settlement for all damages incurred by reason of said injuries with a consideration of $196.00 of which the plaintiff never received more than $105.00. That the plaintiff did not and could not know the contents of said receipt before bringing this action. That by reason of the facts stated herein, plaintiff lost his cause of action against said bridge company, and now brings this action as an action of deceit on said fraudulent settlement, and demands judgment for $19,800.00, and all proper relief."

If this were an action to recover damages resulting from the negligence of appellant bridge company; the unrescinded contract of settlement which appellee has affirmed would preclude a recovery, for the reason that that matter must be regarded as settled. *South Bend, etc., Gas Co.* v. *Jensen* (1914), 182 Ind. 557, 105 N. E. 774; *Indianapolis Abattoir Co.* v. *Bailey* (1913), 54 Ind. App. 370, 102 N. E. 970. The case at bar proceeds upon an entirely different theory. It is an action for damages resulting from the alleged fraud and deceit. It originated when appellee acted upon the alleged deceit charged to have been practiced upon him by appellants. By this form of action he affirms the contract of release and proceeds upon the principle announced in *Home Ins. Co.* v. *Howard* (1887), 111 Ind. 544, 13 N. E. 103; that "a person so circumstanced may retain what he has received and sue whoever is liable for the consequences of the deceit by which the compromise was brought about, and recover whatever damages resulted therefrom." See, also, *Michi-*

*gan, etc., Ins. Co.* v. *Naugle* (1891), 130 Ind. 79, 86, 29 N. E. 393; *Baker* v. *Becker* (1913), 153 Wis. 369, 381, 141 N. W. 304.

This principle has been frequently applied in fraud cases involving land deals, insurance settlements, and various other transactions, but seldom invoked in cases growing out of the settlement of damages for personal injuries. This may be accounted for on the ground that the measure of damages for deceit is not necessarily the amount which might be recovered in an action on the original tort, but it is the amount on which the parties might have agreed irrevocably in the absence of the alleged deceit, or had they alike known the facts upon which the settlement was made.

Appellants insist that the allegations in the complaint relied on to show fraud, for the most part, are mere expressions of opinion; that they were not statements of existing facts; that appellee had an equal opportunity with appellants to know or learn the facts; that he was in a better position to know his real condition than either of the appellants.

2. 

The complaint shows that appellants called upon him at the hospital and, among other things, "stated to him that they had consulted physicians and knew that his injuries were only temporary, and that his eye would be fully restored and would be well in a few days; that the X-ray showed there was nothing the matter with his eye; that his only damage would be the loss of a short period of time and the compensation for medical services." These statements are alleged to be false, but that plaintiff believed and relied on them as true, and accepted the sum of $105 in settlement. The statements set forth in the pleading give some foundation for appellants' contention, but when the nature of the representations and meaning of the language used in the complaint as a whole is considered and applied to

the subject-matter here in controversy, the objections must fail. In the absence of a general rule applicable alike to all cases of fraud, each case, to a large extent, must be determined upon its own facts. The mere fact that a statement takes the form of an expression of opinion is not always conclusive, for, as the question is now presented, it must be interpreted by the facts and surrounding circumstances shown by the complaint. The rule that actionable fraud cannot be based upon the mere expression of an opinion has been qualified until now an expression of an opinion may amount to fraud, where it is a mere contrivance of fraud, or if the person to whom it was expressed has justly relied on it and has been misled, or when it is coupled with other circumstances. 12 R. C. L. 248, §16.

Considering the complaint as a whole, it charges appellants with fraud in procuring the contract of settlement. From this conclusion it may be said

3. as a general rule that "when a party to a contract is guilty of fraud, he commits a wrong for which he is liable to the defrauded party, to pay, at least, nominal damages." *Northrop* v. *Hill* (1874), 57 N. Y. 351, 15 Am. Rep. 501; *Isman* v. *Loring* (1909), 130 App. Div. 845, 115 N. Y. Supp. 933.

This rule would warrant us in holding the complaint good, for, if the complaint is good for nominal damages, and the trial court overrules a demurrer to it,

4. that ruling will be sustained on appeal. *Armstrong* v. *Dunn* (1896), 143 Ind. 433, 440, 41 N. E. 540; *Yorn* v. *Bracken* (1899), 153 Ind. 492, 495, 55 N. E. 257; *City of Indianapolis* v. *American, etc., Co.* (1911), 176 Ind. 510, 96 N. E. 608; *Halstead* v. *Stahl* (1910), 47 Ind. App. 600, 94 N. E. 1056; *Sebienske* v. *Downey* (1910), 47 Ind. App. 214, 93 N. E. 1050.

In the case at bar substantial damages are alleged. They are said to have resulted from the negligence of

the appellant bridge company; consequently the complaint, in order to be sufficient to warrant a recovery of substantial damages, must show a valid claim against the bridge company for the original tort. This is a necessary element of this action, for it is the basis upon which damages are estimated. Under the present liberal rules of pleading, it will be unnecessary for us to analyze the complaint in this particular, for the demurrer admits not only the facts directly and specifically alleged in the complaint but also all facts that can be implied from other allegations by reasonable and fair intendment. *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99; *Vandalia Coal Co.* v. *Coakley* (1915), 184 Ind. 661, 111 N. E. 426.

We therefore conclude that the complaint in the instant case shows the essential elements necessary to state a cause of action. These elements are representations, falsity, scienter, deception and injury. *Arthur* v. *Griswold* (1874), 55 N. Y. 400, 410; *Ochs* v. *Woods* (1917), 221 N. Y. 335, 117 N. E. 305; *Nash* v. *Minnesota Title, etc., Co.* (1895), 163 Mass. 574, 40 N. E. 1039. In *Hadcock* v. *Osmer* (1897), 153 N. Y. 604, 608, 47 N. E. 923, the rule applicable to this case is stated as follows: "Where a party represents a material fact to be true to his personal knowledge, as distinguished from belief or opinion, when he does not know whether it is true or not and it is actually untrue, he is guilty of falsehood, even if he believes it to be true, and if the statement is thus made with the intention that it shall be acted upon by another, who does so act upon it to his injury, the result is actionable fraud." The demurrer to the complaint was properly overruled.

Appellants in support of their motion for a new trial insist that the court erred in giving to the jury certain

instructions requested by the appellee, and in refusing to give certain instructions requested by them, also that the damages assessed by the jury were excessive, and there was no evidence to support the verdict, and the same was contrary to law.

Upon a careful consideration of the record before us, we have concluded that this case was presented to the jury upon an erroneous theory. The instructions given to the jury clearly support this view.

9. The court, in substance, told the jury that before plaintiff could recover he must not only prove the allegations of his complaint with respect to the fraud which induced the settlement, but also prove his allegations of negligence, or any one of the acts of negligence which was the proximate cause of his injuries. We have no fault to find with the instructions in this respect, but on the question of the measure of damages the instruction proceeds upon the theory of an award as of the date of the trial, which will make the settlement an honest and fair one at that time. The instruction follows: "If you find for the plaintiff against the defendants, or either of them, you will fix the amount of damages he may be entitled to as against the defendant or defendants, as the case may be, against which you find. In fixing such damages, you may consider the character of the plaintiff's injuries, whether they are probably permanent, or only temporary in their character, how much pain or suffering, either physical or mental, he has undergone or will probably undergo on account of his injuries, any loss of time or earnings he has sustained or will probably sustain on account of them, any reasonable expenses he has incurred or will probably incur in treating them, his expectancy in life if you find such injuries are permanent; and award him such damages as you believe will make the settlement in question an honest and fair one, which award of dam-

ages by you should be the difference between the amount in the settlement and the actual value of the damages surrendered by such settlement not, however, exceeding the amount named in the complaint." This instruction was erroneous, in that the jury was given an erroneous basis for determining the measure of damages in case they found for the plaintiff.

The case of *Urtz* v. *N. Y., etc., R. Co.* (1911), 202 N. Y. 170, 95 N. E. 711, was an action to recover damages on account of fraudulent representations whereby the plaintiff was induced to settle her claim for damages against the defendant for the negligent killing of her husband at a highway crossing of defendant's railroad. Preliminary to a statement of the rule concerning the measure of damages, the court by Collin, J. said: "The basic principle underlying all rules for the measurement of damages in actions for fraud and deceit is indemnity for the actual pecuniary loss sustained as the direct result of the wrong. (*Krumm* v. *Beach*, 96 N. Y. 398.) Neither advantage nor disadvantage resulting to the plaintiff from the settlement enters in any way into our conisderation. The question is what was the value of that with which plaintiff parted and what was the value of that which she received?    *    *    * In case the right of action had no value, she had gained by the transaction and was not injured. It had no value whatever if the true state of facts disclosed that it was an invalid and nonexisting claim or, in other words, that the defendant was not negligent, or, if the defendant was negligent, that the intestate was not free from contributory negligence. If, however, the true state of facts would have established that the defendant was negligent and the intestate free from contributory negligence, then the plaintiff had a valuable right of action, the acquirement of which through the fraud may have injured her.    *    *    *    An alleged value of

the claim based upon the accident and the death or facts sufficient to warrant the reasonable belief of the plaintiff that she had a just claim, is of a nature too speculative and wagering to be recognized by the law in this action for fraud. The jury in considering the question of damages should first ascertain whether or not the plaintiff was originally entitled to a recovery of some amount. * * * If the jury determine that she was not originally entitled to recover, then their verdict would be for the defendant. If they determine that she was entitled to recover, then they would proceed to measure the damages and the rule by which they should be guided therein has been clearly expressed by us in *Gould* v. *Cayuga County National Bank* (99 N. Y. 333). Assuming that the parties meant to avoid litigation and compromise their dispute, and that the true facts and defendant's contradiction of them were disclosed, how much could the plaintiff have reasonably demanded and the defendant reasonably have allowed as a final compromise above and beyond the $500, in fact allowed and received? That the jury must answer. They would take into view the probabilities of the successful enforcement of the cause of action, the probable extent and expense of the expected litigation over this disputed claim, the law's delays, the probability of the continuing solvency of the defendant and such other facts pertinent to the question of damages as the evidence presented. What under all the conditions and circumstances was this claim of the plaintiff, valid under the true, yet opposed and contradicted, state of facts, worth for purpose of sale, transfer or cancellation, if anything at all, above the five hundred dollars."

We have said the compromise and settlement of the original tort stands. The fraud, if any, was committed on the day the settlement was made. By affirming the settlement, the willingness on the part of

Rochester Bridge Co. *v.* McNeill—188 Ind. 432.

appellee to compromise his claim against appellant affirmatively appears. The question then is, What amount in excess of what appellee received was he reasonably entitled to in view of all the facts and circumstances fairly within the contemplation of the parties at the time the settlement was made? The basic principle underlying all rules for the measure of damages for fraud is indemnity for the actual loss sustained as a direct result of the wrong. Applying that principle to the instant case, if it be found that through fraud and deceit a compromise was procured of a valid claim in dispute, the measure of damages would be the amount which the injured party reasonably could have demanded, and the defendant would reasonably have allowed as a final compromise above and beyond the sum in fact allowed and received. *Ishie* v. *Norton Co.* (1918), 183 App. Div. 94, 170 N. Y. Supp. 655.

In our view of the instant case, it belongs to that class where the settlement of the original tort must be considered as having been had on what was then known and could have been reasonably foreseen as the probable effect of the injury according to the usual course of events and general experience.

In *Indiana Steel, etc., Co.* v. *Studes* (1918), 187 Ind. 468, 119 N. E. 2, no question was raised or decided relative to the rule for the measure of damages.

Judgment reversed, with instructions to grant a new trial, and for further proceedings not inconsistent with this opinion.

Note.—Reported in 122 N. E. 662. See under (1) 20 Cyc 90; (2) 20 Cyc 18; (3) 20 Cyc 142; (5) 20 Cyc 102; (7) 20 Cyc 98; (8) 20 Cyc 27.