AUTOMOBILE UNDERWRITERS, INC. *v.* RICH.

[No. 27,916. Filed March 28, 1944. Rehearing denied April 18, 1944.]

386

*Parr, Parr & Parr*, of Lebanon, and *Fenton, Steers, Beasley & Klee,* of Indianapolis, for appellant.

*John W. Hornaday*, of Lebanon, and *Edwin McClure* and *Seth S. Ward,* both of Indianapolis, for appellee.

O'MALLEY, J.—The appellee filed this action against appellant to recover damages alleged to be sustained by reason of the fraud of appellant's agent in the procurement of a release and covenant not to sue.

The complaint alleged that H. A. Montgomery and his agent, Price Baldwin, were covered by a liability

insurance policy issued by appellant, and that appellee while riding as a passenger in a motor car was injured in a collision between the motor car in which appellee was riding and a truck owned by H. A. Montgomery and operated by his agent, Price Baldwin. That the accident took place at or near Garden City, Indiana on State Road 31; that her injuries were caused solely and only by the negligence of Price Baldwin while acting for and on behalf of H. A. Montgomery; that in the accident the appellee's left kneecap was injured permanently; that as a result of said accident the appellee has suffered much pain and that the proximate cause of the accident was the negligence and unlawful acts of Montgomery acting by and through his agent Baldwin. That by reason of her injuries so suffered, appellee has a just and valid claim against Montgomery in the sum of Forty-thousand Dollars ($40,000.00). It is further alleged that as a result of this accident the appellee has a stiff knee and is unable to carry on her work and will be unable to carry on her work; that at the time of the accident the appellee was a widow, the mother of two children, and earning Twenty-six Dollars ($26.00) per week; that as a result the appellee is still under the care of a physician, has a complete ankylosis of the left knee and has already expended the sum of Nine Hundred Forty-five Dollars ($945.00) for medical care and hospitalization. The complaint further alleged that the appellant as insurer of Montgomery and Baldwin fraudulently obtained a release and covenant not to sue from appellee for the sum of One Hundred Fifty Dollars ($150.00); that the agent of appellant, a lawyer, told appellee that she needed no attorney to inform her of her' rights; that he knew her rights and that One Hundred Fifty Dollars ($150.00) was the greatest amount that she could hope

to recover; that unless she took this sum and made settlement she would receive nothing. It was further alleged that at the time of the settlement the appellee was under the care of appellant's physician; that the claim agent told appellee that he had investigated her injuries and that her injuries were not permanent but merely temporary, and that she could go to work in a few days; that the amount offered was more than she could possibly recover by going to court; that each representation was false; that appellant knew each of them to be false; that the appellee relied on and believed said representations and was thereby misled; that she would not have executed the release and covenant not to sue if she had known the falsity of the representations so made, and that the acts of appellant were irregular, deceptive and false.

To this complaint a demurrer was filed setting forth that the complaint did not contain facts sufficient to constitute a cause of action. In the memorandum attached to the demurrer the only reasons in support thereof are that the representations of fraud refer to matters of opinion and to future matters, and that there was no duty owing by appellant to appellee.

This cause is predicated upon the long standing principles of law that where a right of action exists on behalf of a plaintiff against a defendant, and the defendant, or some one for him, by fraudulent representations induces the plaintiff to make a settlement of his cause for an inadequate sum, the plaintiff has the right to elect to proceed in one of two ways:

1. He can tender or return whatever was received and bring suit on the original right of action, requesting therein that the settlement be set aside, or he can await the interposing of the settlement in bar

of his suit and then set up the fraud and payment in avoidance.

2. He can keep what he has received and file suit against the ones perpetrating the fraud and recover such amount as will make the settlement an honest one.

If the second method is pursued, the plaintiff recognizes that the settlement is a bar to the original action and that it is incumbent on him to allege and prove not only that the settlement was procured by fraud and to his damage, but also that he had a good cause of action against the original tort-feasor at the time of the settlement.

The measure of damages under this second method must take into consideration the salable value of the right of action for the purpose of compromising, and the nature and extent of the injuries known and foreseeable as of the time of the settlement, under the particular circumstances of the parties then shown existing. *Rochester Bridge Co.* v. *McNeill* (1919), 188 Ind. 432, 122 N. E. 662. See also *Gould* v. *Cayuga Co. Natl. Bank* (1885), 99 N. Y. 333, 2 N. E. 16.

The fraud or deceit necessary to recover in this class of cases must be the same as in any other class.

In the case of *The Watson Coal and Mining Company* v. *Casteel* (1879), 68 Ind. 476, this court said:

"Representations, to amount to fraud, must be false; they must be made for a fraudulent purpose; they must be believed to be true by the party to whom they are made; they must have induced him to act upon them; and they must have effected the fraud."

In the case of *Lewark* v. *Carter et al.* (1889), 117 Ind. 206, 20 N. E. 119, this court said:

"Representations made for an honest purpose, and with fair reason for believing them to be true, are not fraudulent, although it may turn out that they were not true."

In the case of *Furnas* v. *Friday* (1885), 102 Ind. 129, 1 N. E. 296, it was said:

"Where there is an honest purpose, and neither recklessness nor carelessness, there can be no fraud, for fraud involves moral turpitude, and where there is neither a dishonest purpose nor recklessness, there can be no moral wrong."

In 23 American Jurisprudence 773, it is said:

"The essential elements required to sustain an action for deceit are, generally speaking, that a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage."

In *Rochester Bridge Co.* v. *McNeill, supra,* it is said:

"The mere fact that a statement takes the form of an expression of opinion is not always conclusive, for, as the question is now presented, it must be interpreted by the facts and surrounding circumstances shown by the complaint. The rule that actionable fraud cannot be based upon the mere expression of an opinion has been qualified until now an expression of an opinion may amount to fraud, where it is a mere contrivance of fraud, or if the person to whom it was expressed has justly

relied on it and has been misled, or when it is coupled with other circumstances."

Applying the above principles of law as enunciated by this and other courts, we feel that the court did not err in overruling the demurrer to the complaint. It sets forth a valid claim, or cause of action against the original tort-feasor, and sufficiently charges fraud and deception in the making of the settlement.

Error is also predicated upon the insufficiency of the evidence. While we must take the evidence, together with all reasonable inferences most favorable to the appellee, yet it is essential that there be some evidence supporting the verdict of the jury. *Larch* v. *Holz* (1913), 53 Ind. App. 56, 101 N. E. 127; *Cleveland, etc., R. Co.* v. *Moore* (1909), 45 Ind. App. 58, 90 N. E. 93; *Baldwin* v. *Fleming* (1883), 90 Ind. 177; *State ex rel. Board, etc.* v. *Cole* (1939), 215 Ind. 562, 20 N. E. (2d) 972.

The complaint upon the issue of fraud alleges that Harvey, the agent of appellant, made the following statements to the appellee, upon which she relied and which induced her to sign the release and covenant not to sue: 1. That he was an attorney and acquainted with her rights; 2. that she needed no attorney to inform her of her rights; 3. that one hundred fifty dollars ($150.00) was the greatest amount she could hope to recover; 4. that unless she took this sum and made settlement she would receive nothing; 5. that he had investigated her injuries and that they were not permanent but merely temporary and that she could go to work in a few days; 6. that if she filed suit it would of necessity be in Bartholomew County and that a farmer jury of that county would give her nothing;

7. that even if she did recover she would need attorneys and that the attorneys would take all that would be awarded her.

All of these except number five were mere assertions or matter of opinion, and we are unable to find any evidence of their falsity, although we carefully searched the record. The evidence on the one point, number five, is that the claim agent told the appellee that he had talked with her physician and that the physician said that her injuries were merely temporary and not permanent. There is no evidence that this statement was untrue.

The undisputed evidence discloses that the physician referred to was one employed by the appellee, and not by the appellant, as charged in the complaint. It further discloses that this settlement was made in the home of the appellee at the same time that all other settlements were made with persons involved in the same accident, and that her mother, her father, her sisters and others were present. The appellee herself testified that her physician informed her that her injuries were but temporary. She also testified that she had gone back to work prior to the date of the settlement, and that after receiving the check she held it about ten days, before cashing it, to see how her injuries would develop. From these undisputed evidentiary facts we must conclude that there were no false statements of a material fact upon which she relied and which induced her to sign the release and covenant not to sue. The fact that the appellee's injuries developed differently than expected could not be considered as sufficient evidence of the falsity of the representations set forth in the complaint. Even where it is held that expressions of opinion may con-

stitute fraudulent representations, it is so held because the person making them believes differently than he expresses himself at the time. 23 American Jurisprudence, *Fraud & Deceit*, § 29, p. 787.

The authorities all are to the effect that in order to constitute fraud there must be moral turpitude on the part of the person so charged. *Furnas* v. *Friday, supra.* There must be falsity to create moral turpitude, and in so far as this case is concerned there is an entire absence of evidence on that subject. Certainly if the claim agent honestly told the appellee what the physician selected by her had imparted to him, that of itself would be insufficient upon which to base a charge of fraud.

The appellant also claims error in the giving of instructions on motion of the court, and in refusing to give instructions tendered by the appellant.

Instruction number thirty, given on motion of the court, was the only instruction given which touched on the measure of damages, and by it the jury was told that the damages, if any, to the appellee, would be the difference between the one hundred fifty dollars ($150.00) already received and the actual value of her claim at the time it was surrendered on September 14, 1936. While this may be correct as far as it goes, it did not give the jury a method or means for measuring value.

Instruction number nine, tendered by appellant and refused by the court, would have told the jury that the amount of recovery would be that amount which the injured party reasonably could have demanded and the defendant could reasonably have allowed as a final compromise above and beyond the sum in fact allowed and received. This instruction

was in conformity with the rule announced in *Rochester Bridge Co.* v. *McNeill, supra,* a similar case, but the intent of the rule announced must be taken from the whole case and not from the one isolated statement. The purpose of the rule seems to be to discover the probable amount at which the parties would have arrived, in the absence of deceit or overreaching. The charge ought to inform the jury that they should endeavor to discover what that probable amount would be after considering all of the known or foreseeable facts and circumstances which in any way affected the value of the claim on the date of settlement, and having once arrived at that figure, they should then deduct the amount already allowed and paid and insert the balance, if any, in the verdict as the true measure of the damage suffered. The ultimate fact to be ascertained is the actual damage caused by the fraudulent representations and not the damage for the original injury. While this may be an enlargement of the rule announced in the case of *Rochester Bridge Co.* v. *McNeill, supra,* it is in conformity with the spirit thereof.

The reason for this rule as announced is apparent from the circumstances shown in this case. Here the medical experts differed as to whether or not the ankylosis of the knee could have been caused by the accident. The appellee's own physician and one other testified that the ankylosis was not caused by the accident. Two other doctors said that it probably was caused by the accident. No doctor testified that the ankylosis was the result of the original injury or that anyone could have foreseen any such result, on the date of the settlement.

Other errors are claimed, but we do not deem it necessary to discuss them for the reason that they are not apt to occur in any future trial.

For errors indicated, this cause is reversed with instructions to sustain the motion for a new trial and for other proceedings in accordance with this opinion.

NOTE.—Reported in 53 N. E. (2d) 775.