[No. 32314. *En Banc.* April 23, 1954.]

CARL PATE, *Respondent,* v. GENERAL ELECTRIC COMPANY *et al., Appellants.*[1]

*Moulton, Powell, Gess & Loney,* for appellants.

*Tonkoff & Holst* and *Blaine Hopp, Jr.,* for respondent.

*Leo H. Fredrickson, amicus curiae.*

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the Departmental opinion heretofore filed herein and reported in 43 Wn. (2d) 185, 260 P. (2d) 901.

GRADY, C. J. (dissenting)—The rehearing of this case has convinced me that the Department was in error when it reversed the judgment. Neither of the questions we decided were the basis upon which the verdict of the jury rested. The complaint presented four theories of liability: (a) the employer failed to report the accident to the department of labor and industries as required by Rem. Rev. Stat., § 7689 [*cf.* RCW 51.28.010]; (b) the physicians employed by the company did not inform the injured workman of his rights under the workmen's compensation act as required by Rem. Rev. Stat., § 7686 [*cf.* RCW 51.28.020]; (c) fraud and misrepresentation directly and by concealment on the part of the company physician whereby the plaintiff lost his rights under the act; and (d) the plaintiff sustained a compensable injury; that the defendants acting through their employed physicians negligently failed to advise him of his rights with respect thereto; and as a result of such negligence he failed to file a claim for compensation within the time required by law. Theory (d) was based upon common-law principles of negligence, while (b) was based upon the statute above referred to.

In its instructions to the jury, the court read the two statutes above referred to, but told the jurors that no specific claim of negligence was predicated upon the defendants' failure to report the accident to the department, and that the filing of such a report or the furnishing of a medical certificate by an attending physician were not conditions precedent to the establishment of a claim for compensation under the act. The court properly instructed on the subject of contributory negligence. The

[1] Reported in 269 P. (2d) 589.

court instructed the jury on theory (d) and informed the jurors that, if the attending physicians negligently failed to inform plaintiff of his rights under the act and that such negligence on their part was the proximate cause of plaintiff's failure to file a claim for compensation within the time required by law; the plaintiff would be entitled to recover. The court did not submit theories (a) and (b) to the jury. No cross-appeal was taken by respondent. The jury considered only theories (c) and (d). The jury found against plaintiff on theory (c).

The appeal is based upon theory (d), and though mention is made by appellants in their brief of Rem. Rev. Stat., § 7686, the assignments of error on the subject of negligence do not relate to the statutory negligence. No reference is made in the briefs to Rem. Rev. Stat., § 7689. There was no occasion for appellants to assign error with reference to any negligence arising out of noncompliance with Rem. Rev. Stat., §§ 7689 and 7686, because they were not submitted to the jury and the verdict was not based upon either of them. In his brief, respondent seeks to justify the verdict by citing §§ 7689 and 7686 and strongly relies upon them in his petition for rehearing. I think it is right here that the Department fell into error when we said:

"The crux of the problem, presented by appropriate assignments of error, is this:

"No claim for benefits having been filed within the statutory period under the workmen's compensation act by an injured workman for a compensable injury, is an employer liable to him in damages (measured by what the workman would have received under the act) upon the theory of negligence, when (a) the employer does not report the accident to the department of labor and industries, and (b) a physician in the full-time employment of the employer does not inform the injured workman of his rights under the workmen's compensation act?"

After making reference to (a) and (b) as the questions here for review, we proceeded to correctly decide them and ended up with a reversal of the judgment, entirely overlooking (d), which was the basis of the verdict for respondent. The appellants properly brought (d) into the case upon their appeal, but, like respondent, injected (b) into it also, which resulted in confusion to the writer of this dissent, causing him to sign the Departmental opinion. The confusion was not cleared up until consultation after the rehearing *En Banc*. It is my opinion that respondent made out a case of common-law negligence for the jury, and that the court properly entered judgment on the verdict as modified.

The theory of negligence upon which the verdict was based was embodied in instruction No. 11, which reads as follows:

"You are instructed with respect to plaintiff's second or alternate premise that if you find by a fair preponderance of all the evidence in the case each of the following elements:

"1. That plaintiff had a compensable injury or resulting physical condition under the Workmen's Compensation Act;

"2. That the attending physician negligently failed to inform plaintiff of his rights under the Workmen's Compensation Act; and

"3. That such negligence on the part of the physician was the proximate cause of plaintiff's failure to file a claim for compensation within the time required by law.

"then plaintiff would be entitled to recover upon the basis of this premise, provided he was not himself guilty of contributory negligence."

The jury had before it evidence from which it could find the factual

situation as set forth in the Departmental opinion. Besides the testimony of respondent quoted in the opinion, there appears his further testimony on direct examination as follows:

"Q. Did the doctor (Dr. Brockman) tell you on March 9, 1948 you had varicose veins on your left leg? A. Yes, she did. Q. Was it on March 9th? A. The date I don't remember, anywhere from thirty to sixty days after the accident she told me, that is as close as I can come. . . . Q. Did the doctor say anything about varicose veins. A. Yes. After these treatments and my leg cleared up a little and this black spot stayed on the back of my leg she said, 'You have a varicose vein, your own personal injury.'"

Respondent on cross-examination testified:

"Q. He (referring to one of the doctors) is the only doctor that talked to you about filing a claim for industrial insurance? A. He is the only one. Q. As I understand, he said to you he didn't think it was necessary for you to file a report? A. That is what he told me. Q. Is that all he told you? A. To go back to work. Q. He thought you would be alright? A. Yes."

When respondent sprained his ankle, he sustained a compensable injury. Based upon conflicting expert testimony, the jury had the right to find, and evidently did find, that the varicose vein that developed in the region of the sprain resulted from such sprain.

Although no affirmative duty rested upon appellants to inform respondent that he had a compensable claim and that he should file a claim with the department within a prescribed time, appellants through their physicians negligently led him to believe that the sprain was a minor injury which would be adequately treated by one of them and that the varicose vein had no relationship to the sprain, hence he should not file a claim with the department. The motive behind all of this was to avoid the filing of claims by injured workmen in order to keep down cost experience.

When appellants through their doctor-employees undertook to and did inform respondent as to the nature and character of his injury resulting from the sprain and whether there was such a connection between the spraining of his ankle and the development of the varicose veins in relation to the question whether he had sustained a compensable injury under the industrial insurance act, it was their duty in so doing to exercise ordinary and reasonable care and prudence under the then existing circumstances. That which appellants took upon themselves to perform became as binding upon them as if there had been a duty so to do imposed by law; and, if they breached that duty with a resulting injury, actionable negligence existed. This is especially true when that which appellants assumed to do was beneficial to them. The basic thought is that the duty of appellants to use care in connection with what their doctors told respondent arose not from a right on the part of respondent to receive such information, but from the relation between appellants and respondent which the giving of the gratuitous information created. The relation being established, the legal incidence pertaining to it followed. 38 Am. Jur. 659, § 17; 45 C. J. 646, § 18 b; 65 C. J. S. 344, § 4 (4). The applicable rule is stated in Restatement of the Law of Torts, § 552 as follows:

"One who in the course of his business or profession supplies information for the guidance of others in their business transactions is subject

to liability for harm caused to them by their reliance upon the information if

"(a) he fails to exercise that care and competence in obtaining and communicating the information which its recipient is justified in expecting, and

"(b) the harm is suffered (i) by the person or one of the class of persons for whose guidance the information was supplied, and (ii) because of his justifiable reliance upon it in a transaction in which it was intended to influence his conduct or in a transaction substantially identical therewith."

The comment following the text gives a very lucid statement of how the rules of law are applied. The same principle finds expression in those situations where a person voluntarily goes to aid another in distress or in danger when he is under no legal duty so to do. In what he does in that connection, he must exercise due and reasonable care, and a failure to exercise such care may render him liable in damages. We have applied the rule where a landlord not having any legal duty to remove snow and ice voluntarily assumed such duty. We decided that, for his negligent failure to perform such duty, he was liable to his tenants who were thereby injured while making proper use of the leased premises. *Schedler v. Wagner,* 37 Wn. (2d) 612, 225 P. (2d) 213, 230 P. (2d) 600.

The jury was justified in finding that appellants had acted in a negligent manner in advising respondent with reference to his rights with respect to a claim under the workmen's compensation act, and that such negligence was the proximate cause of his failure to file such claim within the time required by law.

The court instructed the jury that the measure of damages would be the compensation respondent would have been entitled to receive under the workmen's compensation act had he timely made a claim therefor. The jury was informed of the items allowable under the act. The form of verdict submitted to the jury covered (1) total medical fees, hospital fees, and expenses incurred; (2) total future medical fees, hospital fees, and expenses; (3) total time lost in the past; (4) total future time loss; (5) present permanent partial disability; and (6) future permanent partial disability by reason of amputation. Awards were made for each of these items.

On motion of appellants for a new trial, the court reduced the amount awarded for future time loss. On motion of respondent, the court increased the item of future permanent partial disability by reason of amputation to comply with the statutory award. Respondent invokes RCW 4.76.030 and requests that the award of the jury for future time loss be reinstated.

The measure of damages in a case of this kind is the reasonable value of the cause of action or claim which a plaintiff has lost by reason of his justifiable reliance upon the statements or conduct negligently made or done by the defendant. *Desmarais v. People's Gas Light Co.,* 79 N. H. 195, 107 Atl. 491; *Rochester Bridge Co. v. McNeill,* 188 Ind. 432, 122 N. E. 662; *Urtz v. New York Central & Hudson River R. Co.,* 202 N. Y. 170, 95 N. E. 711; *Kordis v. Auto Owners Ins. Co.,* 311 Mich. 247, 18 N. W. (2d) 811; *Clark v. Amos,* 144 Kan. 115, 58 P. (2d) 81; *Sainsbury v. Pennsylvania Greyhound Lines,* 183 F. (2d) 548. Some of these were fraud cases,

but the same principles apply when the action is based upon negligence.

The court included in its instructions and in the form of verdict submitted the proper items of loss to respondent by reason of his not making a claim to the department of labor and industries brought about by the negligent conduct of appellants. The amount of each item was either established by the evidence or was fixed by the workmen's compensation act.

I am in accord with the action of the trial judge in making the reduction and increase of the respective items above referred to.

The judgment should be affirmed.

HAMLEY, DONWORTH, and FINLEY, JJ., concur with GRADY, C. J.